IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL HATCHER,

    Plaintiff,

v().                                               CASE NO. 2:10-cv-1099-PWG

PRECOAT METALS, a division of
SEQUA CORPORATION, a Delaware
Corporation, et al.,

    Defendants.

### MEMORANDUM OPINION

Before the court is defendant Precoat Metals's motion for summary judgment, brief, and evidentiary submissions (doc. 20); plaintiff's opposition (doc. 22) and evidentiary submissions (doc. 23); and defendant's reply (doc. 24).[1] Having considered the motion and all other pleadings filed to date, the undersigned finds as follows:

### Factual Background

Plaintiff Michael Hatcher ("Hatcher") was hired into the Operations Support department at defendant Precoat Metals on November 15, 2007, and began work as a Packer. Hatcher Depo. (Doc. 20 Exh. A) 33, 81. Randy Allen ("Allen") also began working for defendant on that day; the two men were in the company's orientation program together. Hatcher Depo. 102–03; Louie Depo. (Doc. 20 Exh. D) 27. As a member of the Operations Support department, plaintiff could be assigned to a range of duties, including, but not limited to, slitter helper and packaging duties. Hatcher Depo. 33, 219–20; Louie Aff. (Doc. 20 Exh. B) ¶ 4.

---

[1]The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). *See* Doc. 11.

On or about December 10, 2007, plaintiff and Slitter Supervisor Grady Smith ("Smith") were standing with Allen. Hatcher Depo. 43, 47–48, 71–73. Smith asked, "Do anybody know any jokes about cars[?]" *Id.* at 48. Allen replied that a Ford was known as a "[f]ucking old rebuilt Dodge." *Id.* Plaintiff and Smith laughed. *Id.* at 48–49. Smith then asked plaintiff if he knew a joke. *Id.* at 49–50. Plaintiff said that Ford stood for "[f]ound on the road dead." *Id.* at 50. Plaintiff and Smith laughed again. *Id.* Then Smith said, "I got one," and said that Pontiac stands for "Poor old nigger think it's a Cadillac." *Id.* No one laughed at this joke, and the conversation ended. *Id.* at 51–52. Plaintiff reported the "Pontiac Joke" to group leader Mike Walker, Rob Nemeth ("Nemeth") and Reverend Reginald Mann. *Id.* at 57, 83–84; Hatcher Aff. (Doc. 23 Exh. A) ¶¶ 5–6.[2] A few days after the Pontiac Joke incident, management held an hour and a half meeting to discuss the racial slur. Hatcher Depo. 87–88. During the meeting, Smith began crying, looked at plaintiff, and apologized for telling the joke; Smith further said that he would never use the racial slur again. *Id.* at 90–91; Zell Depo. (Doc. 20 Exh. N) 25. Plaintiff did not accept the apology, but never heard another racial slur at defendant's facility. Hatcher Depo. 70–71, 91. Although plaintiff believed Smith received no disciplinary action as a result of his inappropriate joke , Hatcher Aff. ¶ 6, in fact  Smith was required to attend  to sensitivity training in February 2008, Zell Depo. 25. Plaintiff was returned to work under Smith's supervision. Hatcher Aff. ¶ 6. Plaintiff further states that this Pontiac Joke incident was the worst thing to happen to him at Precoat Metals. Hatcher Depo. 110–12.

On January 21, 2008, plaintiff was assigned to the position of Slitter Operator trainee and

---

[2]In his affidavit, plaintiff claims he "was afraid to complain to management, in fear he would be fired." Hatcher Aff. ¶ 5.

his hourly rate increased from $14.70 to $16.46. Hatcher Depo. 63–64, 202; Louie Aff. ¶ 5; Doc. 20 Exh. C at 1–2. On May 12, 2008, plaintiff was promoted to Slitter Operator and his hourly rate increased from $16.46 to $17.70. Hatcher Depo. 205; Louie Aff. ¶ 6; Doc. 20 Exh. C at 3. On August 12, 2008, plaintiff's hourly rate increased from $17.70 to $17.81. Hatcher Depo. 207; Louie Aff. ¶ 7; Doc. 20 Exh. C at 4.

As a result to a business slow down, Precoat Metals, on November 14, 2008, and again on November 21, 2008, reduced its workforce from a three shift operation to a two shift operation that resulted in the layoff of eighteen employees. Louie Aff. ¶ 8; Louie Depo. 9.As a consequence of these lay-offs, several employees in plaintiff's Slitter Group had to be occasionally assigned different weekly duties in order to compensate for the smaller workforce. Louie Aff. ¶ 11. The two junior employees who previously held the Packer position were laid off, and plaintiff was assigned to fill the position of Packer. Hatcher Depo. 98; Louie Aff. ¶ 12. Nemeth stated that he assigned plaintiff the Packer responsibilities because his plan was to utilize plaintiff in doing set-ups and operating when needed and to cross-train plaintiff in learning the computer system. Hatcher Depo. 105; Louie Aff. ¶ 15. Plaintiff claims that he was made to do this job without asistance,  although it had been common practice to have at least two people working in the area. Hatcher Aff. ¶ 7. Neither plaintiff nor any other employee received a change in pay or a formal job title change due to this realignment. Hatcher Depo. 98–99, 200; Louie Aff. ¶ 14; Doc. 20 Exh. C at 4–5. Plaintiff states that he felt as though this was  a demotion, although he concedes that no one ever told him he had been  demoted. Hatcher Depo. 97–100, 105–06.

According to Mr. Hatcher on or about November 20, 2008, after taking a fifteen-minute break. Donald Gordon ("Gordon"), the shift supervisor, approached him and accused him of

being away from his work for over an hour. Hatcher Depo. 233; Hatcher Aff. ¶ 10. Plaintiff told Gordon that he was on a fifteen-minute break and was returning from the bathroom. Hatcher Depo. 234, 236; Hatcher Aff. ¶ 10. Gordon responded by grabbing plaintiff by the arm. Hatcher Depo. 234; Hatcher Aff. ¶ 10. Plaintiff told Gordon not to touch him; Gordon responded by grabbing him again. Hatcher Depo. 234; Hatcher Aff. ¶ 10. The next day, Tim Zell ("Zell") called a meeting with plaintiff, Gordon, and Anthony Fleischmann("Fleischmann"). Hatcher Aff. ¶ 11. Zell told plaintiff that, "I want this shit with you and Gordon over and done with." Hatcher Depo. 235; Hatcher Aff. ¶ 11. When plaintiff tried to explain what happened, Zell told him, "Look at it this way; I can make it where you were laid off." Hatcher Depo. 235; Hatcher Aff. ¶ 11. In his deposition, however, plaintiff stated that no one ever told him that complaining about something would cost him his job. Hatcher Depo. 108–09. Plaintiff claims that he informed James Haas ("Haas"), a plant foreman, about the incident. Hatcher Aff. ¶ 11. Haas reportedly told Nemeth what happened, and plaintiff was moved back to the packer position. *Id.*

On November 25, 2008, plaintiff wrote a letter to the EEOC, alleging that he was demoted to the Packer position because of his race, African-American. Hatcher Depo. 59–61. As the basis for his claim, plaintiff stated, "Foreman made racial joke and etcetera" and "Foreman – Grady Smit [sic] – said a racial joke to myself and other employee – Randy Allen" on December 10, 2007. *Id.* at 66–69. Plaintiff further listed Zell, Fleischmann, Nemeth, and "Donnie"[3] as those responsible, because they were the "main managers" at the time. *Id.* at 68–69.

On November 26, 2008, plaintiff filed a Charge of Discrimination with the EEOC ("EEOC Charge") alleging that he had been demoted to the Packer position because of his race.

---

[3]Plaintiff did not know Donnie's last name. Hatcher Depo. 68–69.

*See* Doc. 20 Exh. E (EEOC Charge). He argued that "[a] similarly situated White, employed as an Operator, who has been disciplined for his job performance was not demoted." *Id.* He further stated that Nemeth did not tell him why he was demoted. *Id.*

On December 31, 2008, plaintiff sustained back injuries in a car accident. Hatcher Depo. 112, 131; Doc. 20 Exh. G. Plaintiff received FMLA leave until April 13, 2009. Hatcher Depo. 114, 132–133; Louie Aff. ¶ 16; Louie Depo. 8–9; Doc. 20 Exh. H. On January 5, 2009, plaintiff's hourly rate increased from $17.81 to $17.88. Hatcher Depo. 208; Louie Aff. ¶ 17; Doc. 20 Exh. C at 5. However, because plaintiff was not working, he fell behind financially. Hatcher Depo. 121. In February 2009, Adriane Louie ("Louie"), Precoat Metals's Human Resource Director, assisted plaintiff in obtaining a hardship withdrawal from his 401(k) provider and a loan from his bank. *Id.* at 120–21, 123–24; Doc. 20 Exh. I. Plaintiff states that Louie was always open, available, helpful and respectful towards him, and that she showed sincere concern for her employees. Hatcher Depo. 119–20.

In February 2009, defendant laid off two employees; in April 2009, and in  defendant laid off an additional employee. Louie Aff. ¶¶ 18–19. On April 13, 2009, plaintiff returned to work, with a twenty-five pound lifting restriction ordered by his doctor. Hatcher Depo. 128–29, 132; Doc. 20 Exh. G (doctor's note); Doc. 20 Exh. H. Plaintiff was placed on the paint line instead of as a part of the Slitter crew because paint line employees do less lifting than employees on the Slitter crew. Hatcher Depo. 129, 132; Louie Aff. ¶ 20. Plaintiff returned to work at an hourly wage of $18.42, although he states that he never received a pay check at this rate. Doc. 20 Exh. C at 7; Hatcher Depo. 209–10. On May 11, 2009, in order to avoid additional layoffs, defendant reduced the salary of some of its employees; as a result, plaintiff's hourly rate decreased from

$18.42 to $16.82. Hatcher Depo. 210; Louie Aff. ¶ 21; Doc. 20 Exh. C at 8.

On June 5, 2009, defendant reduced its workforce from a two shift operation to a one shift operation. Hatcher Depo. 220–23; Louie Aff. ¶ 22; Doc. 20 Exh. J (plaintiff's termination letter). In accordance with its "Reduction in the Workforce" policy,[4] defendant determined that the paint line employees had substantially the same "work-related factors" and therefore relied upon an employee's length of continuous service at defendant's facility in determining whether he or she would be selected for the layoff. Hatcher Depo. 137–38; Louie Aff. ¶ 23; Louie Depo. 18; Doc. 20 Exh. K (defendant's Handbook) at 11. This resulted in the layoff of the following employees on the paint line: Ron Rice, Eric Merryweather, Anthony Bates, Craig Phelps, Earnest Glover, Clayton Collier, Carleen Bailey, and plaintiff. Hatcher Depo. 198–99, 213, 218, 220–23; Louie Aff. ¶ 22; Doc. 20 Exh. J. Plaintiff had the least amount of seniority of these employees. Hatcher Depo. 218. On June 15, 2009, defendant laid off five more employees, including Randy Allen and other members of the Slitter crew. Louie Aff. ¶ 24.

On August 4, 2009, plaintiff obtained funds from his 401(k) account. Hatcher Depo. 189, 191; Louie Depo. 12–13; Doc. 20 Exh. M. In order to access his remaining funds, plaintiff had to select a "[r]eason for final distribution" on the form; he selected "resignation/termination."[5] Doc. 23 Exh. J; Louie Depo. 12–15. Plaintiff chose this route rather than attempting take a loan out against his 401(k) or apply for another hardship withdraw. Louie Depo. 14. Defendant claims

---

[4] Defendant's "Reduction in the Workforce" policy states: "In selecting employees to be reduced from a job group, the determining factors will be skill, the ability to perform the available work, job performance, safety performance and attendance. Where work-related factors are equal, the decision will be based on length of continuous service." Doc. 20 Exh. K at 11.

[5] The other options available on the form were "Permanent Disability," "Retirement," and "Company Sold." Doc. 20 Exh. J.

6

that selecting this option resigned his employment, rendering him ineligible for recall by defendant,[6] Louie Aff. ¶ 25; Louie Depo. 12–13; plaintiff admits that Louie told him he would have to resign in order to obtain the benefits, Hatcher Depo. 189. Plaintiff did not reapply for his job or for new employment with defendant. Hatcher Depo. 271. On or about August 1, 2009, plaintiff was hired by King Acura in the detail shop; as of October 15, 2009, he worked as an Oil Change technician at Crown Nissan. Doc. 20 Exh. L. Plaintiff states that Randy Allen was recalled back to work.

On April 4, 2010, plaintiff filed this action in state court, alleging that defendant is liable to him under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). *See* Compl. (Doc. 1 at 4–14). On April 28, 2010, defendants filed a notice of removal, removing the action to this Court. *See* Doc. 1, 3. On October 12, 2010, Counts I, III, IV, and V of plaintiff's Complaint were dismissed with prejudice. *See* Docs. 15, 17. Plaintiff's only remaining claim is that defendant retaliated against him by terminating his employment on June 5, 2009, in violation of Title VII. *See* Compl.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine dispute as to any material fact, leaving final judgment to be decided as a matter of law. *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving

---

[6]Defendant's "Recall" policy states: "An *employee* who has been laid off from the plant will be considered for recall when business warrants." Doc. 20 Exh. K at 12 (emphasis added).

party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## Legal Analysis

### Racial Discrimination Under Title VII

In the absence of direct evidence of discrimination, courts analyze Title VII claims under the *McDonnell-Douglas* burden-shifting analysis, which first requires plaintiff to create an inference of discrimination by establishing a prima facie case. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish a prima facie case of retaliation under Title VII, plaintiff must prove: "first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). Plaintiff must be able to show that defendant was actually aware of the protected activity at the time of the adverse action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Once the plaintiff has established a prima facie case of discrimination, the burden shifts

to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *Farley*, 197 F.3d at 1336. The defendant must "clearly set[] forth, through the introduction of competent evidence, the reasons for plaintiff's discharge." *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985). This burden is "exceedingly light" and is "merely a burden of production and not a burden of proof." *Id.*

If the employer meets this burden of production, the plaintiff must then establish that the defendant's proffered reasons were pretext for illegal discrimination. *Id.* (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)). A plaintiff may demonstrate pretext by directly persuading the court that a discriminatory reason more likely motivated the employer, or by indirectly showing the employer's proffered reason is unworthy of credence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  This can be done by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder would find them unworthy of credence."  *Combs*, 106 F.3d at 1538. A reason is not a pretext for discrimination "unless it is shown both that the reason is false, and that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 515 (1993)).

The facts present two potential adverse employment actions: plaintiff's alleged demotion to the Packer position in November 2008 and his lay-off in June 2009. Plaintiff also complains that the incident with Zell was in retaliation for filing his EEOC Charge. As an initial matter, the alleged demotion to Packer and the incident with Zell are both irrelevant to plaintiff's retaliation

claim because both occurred before plaintiff's EEOC Charge was filed.[7] As discussed below, as to his lay-off, plaintiff's claim for retaliation also fails as a matter of law.

First, although plaintiff may be able to show that he engaged in protected activity–the filing of his EEOC claim–and suffered an adverse employment action, he is unable to establish a prima facie case because he cannot point to evidence that the decision-maker was actually aware of his EEOC Charge filing at the time of the action. Plaintiff argues that he need only show that the "corporate entity" was aware of his complaint. Pl.'s Brief at 5 (citing *Gordon v. NewYork City Bd. of Educ.*, 232 F.3d 111, 116 (2nd Cir. 2000)). However, the Eleventh Circuit has specifically rejected this general "corporate knowledge" theory:

> [W]e [are] not . . . persuaded to adopt [plaintiff's] imputed knowledge theory. The . . . corporation itself did not actually make the decision to take the adverse employment action; [the supervisor] made that decision, albeit on the corporation's behalf. Because [the supervisor] did not know of the protected conduct, he could not have taken that action on the corporation's behalf because of the protected conduct. This is another way of saying that the fact the employer is a corporation does not relieve a plaintiff of the burden of showing a causal connection between the protected conduct and the decision to take the adverse employment action.

*Brungar v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 800 (11th Cir. 2000) (citing *Clover v. Total System Services, Inc.*, 176 F.3d 1346 (11th Cir. 1999)). Thus, plaintiff must prove that the specific decision-maker was aware of his protected conduct. *Id.*

Plaintiff has not identified the person he believes is responsible for the alleged retaliation. Specifically, when asked who retaliated against him at Precoat Metals, plaintiff testified that he "can't pinpoint anybody in particular." Hatcher Depo. 270. He acknowledges that HR Director

---

[7]Although some of plaintiff's shifts at the Packer position occurred after his EEOC Charge was filed, the alleged "demotion" must necessarily have happened prior to the filing since plaintiff complained of the demotion in his EEOC Charge. *See* Doc. 20 Exh. E ("On November 17, 2008, I was demoted to the Packer position.").

Louie was part of the group that selected him for lay-off and was also aware of the EEOC Charge. However, plaintiff does not identify Louie as a person who retaliated against him, stating that he always treated her with respect. He also stated that "Jim Has"[8] knew about the EEOC Charge, but also did not identify him as engaging in retaliation. Hatcher Depo. 246–47, 251–52. Plaintiff has provided an email chain regarding the EEOC Charge between Nemeth, Louie, Zell, Fleischmann, John Christopher, and John Smegner, *see* Doc. 23 Exh. B, but again plaintiff does not know who was responsible for his layoff.

Even assuming that plaintiff could identify the decision-maker and provide evidence that he or she had knowledge of the EEOC Charge, the alleged retaliatory event–his layoff–is too separated in time to show causation. Plaintiff filed his EEOC Charge in November 2008; he was laid off in June 2009. The six- to seven-month separation between these two events is insufficient to establish causation. *See Brown v. Ala. Dept. of Trans.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (stating that a three-month separation in time is insufficient). Plaintiff argues that the actual time period between the EEOC filing and his layoff was only two months because he believes the period he spent on FMLA leave should be excluded from the calculation. Pl.'s Brief at 7–8.[9] There is no legal authority requiring ignorance of the time plaintiff missed due to FMLA leave in a temporal proximity calculation. However, even considering this time frame, two months is too long to establish causation. *See Williams v. Waste Mgmt., Inc.*, 411 Fed.Appx. 226,

---

[8]The court assumes that the "Jim Has" identified by plaintiff in his deposition is the same person as the "James Haas" identified in his affidavit. The analysis does not change if the two are different people.

[9]Plaintiff claims that defendant "intentionally excluded [him] from the February and April lay-offs in fear of being in direct violation of the Family Medical Leave Act." Pl.'s Brief at 7. Plaintiff provides no evidence or proof to support this claim.

229–30 (11th Cir. 2011) ("The two-month gap may be 'closer' in time, but it is not 'very close.'").

Finally, even if plaintiff could prove his prima face case, he has not shown that defendant's legitimate nondiscriminatory reason for laying him off was pretext for retaliatory discrimination under Title VII. Defendant's legitimate nondiscriminatory reason for laying off plaintiff was a reduction in force, following a policy laid out in the handbook. This easily satisfies defendant's burden of production.

Plaintiff argues that defendant's reason is false because it did not follow the reduction policy by failing to lay off Allen. Plaintiff claims Allen was hired after he was, although he does not know when Allen was hired nor has he provided any credible evidence that that claim is true.[10] Furthermore, in his deposition, plaintiff stated that he knew no reason that defendant had violated this policy with regard to his treatment. Hatcher Depo. 141. Defendant states that Allen was hired on the same day as plaintiff, albeit earlier in the day, making him slightly more senior than plaintiff. Louie Depo. 27. Plaintiff has shown no violation of policy with regard to the workforce reduction. Plaintiff also has not pointed to any similarly-situated employee who was not also laid off. He argues that Allen was not laid off or discriminated against; however, Allen suffered the same employment action–layoff–a mere ten days after plaintiff did. The fact that Allen was recalled does not change this fact; plaintiff voluntarily resigned his employment with defendant when he elected to withdraw the funds from his 401(k) account.

Plaintiff has not pointed to evidence suggesting retaliatory animus by any supervisor or

---

[10]Plaintiff never looked at any seniority lists nor did he ask anyone when Allen was hired. Hatcher Depo. 260–61.

by defendant. The facts show that plaintiff was merely a victim of a long-term reduction in force. Because plaintiff cannot show a causal connection between his EEOC filing and the adverse action taken against him or that defendant's legitimate nondiscriminatory reason for its actions were pretext for retaliation, his claim fails as a matter of law.

## Conclusion

Having considered the foregoing and finding that the plaintiff has failed to establish a genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that defendant's motion for summary judgment (doc. 20) is due to be **GRANTED**. The court shall so rule by separate order.

**DONE** and **ORDERED**, this 14th day of September, 2011.

_____

PAUL W. GREENE

CHIEF MAGISTRATE JUDGE